**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MELISSA GILVIN, et al.,                          Case No. 1:18-cv-107

     Plaintiffs,

                                                               Dlott, J.
vs.                                                               Bowman, M.J.

FCA US LLC, et al.,

     Defendants.

## REPORT AND RECOMMENDATION

This civil action is now before the court on Plaintiffs' motion to remand and defendants' motions to dismiss. The motions will be addressed in turn.

### I. BACKGROUND

Plaintiffs reside in Clermont County, Ohio. Defendant FCA US LLC, distributes, markets, and sells FCA US LLC motor vehicles to persons in Ohio. (Doc. 3). Defendant, ISG is an agent of FCA US LLC. In May 2016, Plaintiffs leased a new 2016 Ram 1500 truck which was sold, manufactured or distributed by FCA US LLC. Plaintiffs leased the motor vehicle from Jeff Wyler, Eastgate Auto Mall in Batavia, Ohio, at which time they received a written statement of their rights under the Ohio Lemon Law. (See Doc. 1, ¶¶ 8-11). "Upon initially leasing the [truck], [] Plaintiffs did not pay the costs of the taxes, security deposit, or title fees." *Id.* at ¶ 25.

Plaintiffs' claim that their vehicle was out of service by reason of repair for a cumulative total of 30 or more calendar days. Plaintiffs further assert that their motor vehicle was "possessed substantially the same nonconformity, which was subject to repair three or more times, and the nonconformity either continued to exist or was

recurring. *Id.* at ¶ 17. According to Plaintiffs, FCA US LLC, their agents and/or their authorized dealer, were unable to conform Plaintiffs motor vehicle to any applicable express warranty by repairing or correcting the nonconformity after a reasonable number of repair attempts. *Id.* at ¶ 18.

In January 2017, "Plaintiffs were forwarded to Defendant FCA US LLC's agent, ISG, to facilitate an informal dispute resolution to this nonconforming motor vehicle issue." (*Id.* at ¶ 19). During the informal negotiations, ISG made a "refund" offer to Plaintiffs. *See* Doc. 1, Ex. B at pp. 3-6. ISG explained to Plaintiffs that, as a matter of course, the amount of an offer made for the return of a vehicle included a deduction for "the costs for taxes, title fees, and security deposits if the consumer had not paid the costs of these items at the outset of the consumer's dealings with FCA US LLC." *Id.* at p. 3. Plaintiffs were told that since "FCA US LLC had paid the costs of taxes, title fees, and security deposits (or simply waived these costs)," they were not included in the offer being made. *Id.* at pp. 3-4. After ISG "explained … that FCA US LLC was entitled to these costs," ISG gave Plaintiffs "a few days to either accept the settlement offer or ISG would close the case." *Id.* at p. 4. "Plaintiffs did not accept the settlement offer from ISG." *Id.*

Thereafter, Plaintiffs initiated this action for alleged violations of Ohio's Lemon Law, O.R.C. § 1345.72. Notably, Plaintiffs originally filed this action in the Court of Common Pleas for Clermont County, Ohio in January 2018. Plaintiffs seek relief for, *inter alia*, "damages in excess of $25,000 … for the refund of the full purchase price of their nonconforming motor vehicles." Doc. 1, Ex. B at p. 25. In addition to compensatory damages, Plaintiffs also seek punitive damages, attorneys' fees, and injunctive and declaratory relief. *Id.* at ¶ 92 (averring that for their fraud claim Plaintiffs are "seeking

damages, plus punitive damages, interest, and attorneys' fees"); (Id. at ¶¶ 105-06) (requesting injunctive and declaratory relief); *See also Id.* at ¶¶ 107-08) (seeking recovery of attorneys' fees).

Plaintiffs' also seek to bring this action on behalf of themselves as well as two classes of persons: The "First Sub-Class" is apparently attempting to plead a fraud claim, and is defined as:

> "persons within the state of Ohio who, within the last five years, are identified under R.C. §1345.71 as a 'consumer,' that has engaged in a consumer transaction with FCA US LLC where the consumer acquires a motor vehicle manufactured by FCA US LLC, and these person-consumers have attempted to exercise their right to a refund of their nonconforming motor vehicle under R.C. §1345.72, and, either through dealing with FCA US LLC or contact with the agents of FCA US LLC, have been denied the refund of the 'full purchase price' for this nonconforming motor vehicle as defined under R.C. §1345:72, either through denial of a refund for title fees, taxes, and security deposits, or being forced to retroactively pay the cost of these items, which the consumer is specifically entitled to under R.C. §1345.71 et seq."

Doc. 1, Ex.B, ¶45.

The "Second Sub-Class" which is apparently seeking declaratory and injunctive relief, encompasses:

> "persons within the state of Ohio who, within the last five years, are identified under R.C. §1345.71 as a 'consumer' of a motor vehicle manufactured by FCA US LLC, these persons are currently attempting to exercise their right to a refund of their nonconforming motor vehicle under R.C. §1345.72, and, either through dealing with FCA US LLC or contact with the agents of FCA US LLC, are being denied the refund of the 'full purchase price' for this nonconforming motor vehicle as defined under R.C. §1345.72, either through a denial of a refund for title fees, taxes, and security deposits, or being asked to retroactively pay the cost of these items, which the consumer is specifically entitled to under R.C. §1345.71 et seq."

*Id.* at ¶ 94.

Defendants filed a notice of removal with this court on February 14, 2018. (Doc. 1). Defendants' notice of removal asserted jurisdiction under 28 U.S.C. § 1332(d)(2), which is commonly referred to as the Class Action Fairness Act ("CAFA"), as well as diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

On or about August 21, 2017, Plaintiffs made a written settlement demand on FCA US, claiming that "[t]he fraudulent actions" at issue caused them "to sustain far greater damages than simply the recoupment of the 'full purchase price' of their nonconforming motor vehicle." See Doc. 21, Ex. A, Krueger Decl., ¶ 4. In the demand letter, Plaintiffs valued their "compensatory, incidental, and punitive damages [at] no less than $400,000.00 (Four-Hundred Thousand Dollars and Zero Cents)." *Id.*

## II. REMAND

Plaintiffs' now seek to remand this matter back to state court. Specifically, Plaintiffs' contend: 1) the notice of removal was flawed where Defendant, FCA US LLC, failed to adequately show that the amount in controversy exceeds the statutory limits set forth in the CAFA; 2) Defendant failed to show that subject matter jurisdiction for this Court exists separate from the requirements set forth in the CAFA; and 3) Defendant has not provided this Court or Plaintiffs with any actual proof as to the size of the class or the amount in controversy. Plaintiffs' contentions are not well-taken.

### A. Legal Standard

The basis for removing a state court case to federal court "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936); *see also Powell v. Wal-Mart Stores, Inc.*, No. 14-155-HRW, 2015 WL 2063966, at *3 (E.D. Ky. Apr. 30, 2015) (noting that "jurisdiction

is determined at the time of removal"). Thus, the Court may not consider defenses in deciding if a case may be removed. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003). Because removing a case interferes with the state court's jurisdiction, removal statutes are construed narrowly. *See Long v. Bando Mfg. Co. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) (stating "removal statutes are to be narrowly construed" because "they implicate federalism concerns").

The requirements for federal jurisdiction based on diversity of citizenship are set forth in 28 U.S.C. § 1332(a). Diversity is satisfied if no plaintiff and no defendant are citizens of the same state, and the amount in controversy is $75,000 or greater. *See 3LI Consultant Grp. V. Catholic Health Partners*, No. 1:15-cv-455, 2016 WL 246202, at *1 (S.D. Ohio Jan. 21, 2016). The amount in controversy generally does not include interest, costs, or attorney's fees. *See* 28 U.S.C. § 1332(a); *see, e.g.*, *Torres v. State Farm Mut. Auto. Ins. Co.*, 478 F. Supp. 2d 924, 927–28 (E.D. Mich. Mar. 14, 2007). However, punitive damages may be included in the calculation. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). More specifically, unless it is a "legal certainty" that punitive damages cannot be recovered, the Court must consider such damages when examining the jurisdictional amount. *Id.* (*citing Holley Equip. Corp. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)).

Whether Plaintiff will prevail on her claims is irrelevant for the purposes of determining the amount in controversy. *See Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763 (E.D. Mich. 1990). It is sufficient if a fair reading of the Complaint demonstrates that, if Plaintiff is successful, it is more likely than not that her damages will exceed the

required amount. *Id.* Finally, Defendants bear the burden of proving they have satisfied the amount-in-controversy requirement by a preponderance of the evidence. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).

*B. Analysis*

28 U.S.C. § 1332 was amended by the Class Action Fairness Act "CAFA" to provide, in pertinent part, that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). In determining the amount in controversy, the plaintiff is the "master of his complaint":

> It is well established that the plaintiff is the "master of [his] complaint" and can plead to avoid federal jurisdiction. Accordingly, subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount [he] may be entitled to if [he] wishes to avoid federal jurisdiction and remain in state court.

*Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007)

With respect to removal under the CAFA, the United States Supreme Court has instructed that when a class action case is removed by a defendant to federal court under the CAFA "no antiremoval presumption attends." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 554 (2014). Defendants further contend that the legislative history of CAFA suggests that its "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" Id. (quoting S.Rep. No. 109-14, p. 43 (2005)).

Furthermore, the burden to show the jurisdictional requisites is not an exacting one. Where, as here, this Court's diversity jurisdiction is invoked, a removing defendant bears the burden only to "show by a preponderance of the evidence that the amount in

controversy requirement has been met." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). "This standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Id.* (emphasis added; citation omitted). Rather, as the Supreme Court explained in *Dart Cherokee*, when a plaintiff challenges a defendant's contention that the amount-in controversy requisite is met, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 135 S.Ct. at 554.

Here, according to Plaintiffs, Defendants' seek to compute the amount in controversy by relying on *Rosen v. Chrysler Corp.*, 205 F.3d 918 (6th Cir. 2000)[1] to find that the value of each putative class member's claim will be the total $30,000 or more value of the vehicles as opposed to the amount placed in controversy by Plaintiffs' complaint which includes, but is not limited to, the costs of security deposits, taxes, and title fees. Doc. 1, ¶15. Defendants' Notice of Removal also claims that Plaintiffs' class is made up of more than 600 potential members. *Id.* at ¶13. Defendants then choose to multiply the total estimated cost of the vehicles ($30,000) by the random number of 600 potential class members to find that the amount in controversy is in excess of $18,000,000. *Id.* at ¶15.

Plaintiffs argue that the amount-in-controversy requisites are not satisfied because, under Ohio law, the relief they seek (i.e., return their Ram truck in exchange for a refund of the "full purchase price") must be categorized as "revocation" and not as "rescission". Doc. 15, PageID #158-62.  Plaintiffs further contend that they have no way

---

[1] In *Rosen*, the Court held that the amount-in-controversy threshold for diversity jurisdiction was satisfied in a case seeking rescission of motor vehicle sales contracts. *Id.*

of knowing the actual size of the class beyond the random number of 600 potential class members that was provided by the Defendants. At this time, Plaintiffs have no way of knowing the costs of security deposits, taxes, and title fees for each individual class member, but Plaintiffs are similarly able to roughly estimate that the total cost of security deposits, taxes, and title fees for even the most expensive automobile that FCA US LLC has to offer would most likely amount to less than $5,000.00 per class member. As such, Plaintiff's contend that Defendants could not meet the $5,000.000.00 threshold. Such an evidentiary dispute, however, does not require remand at this time.

Defendants' notice of removal sufficiently sets forth that the amount in controversy is satisfied. See, e.g*., Henry v. Jolley*, 2018 WL 1473637, *3 (S.D. Ohio 2018) ("As a threshold matter, Plaintiff's contention that remand is required because 'Defendants have not produced any evidence to prove the value of Plaintiff's claims,' is without merit. The United States Supreme Court considered and rejected such an argument, holding instead that a notice of removal 'need not contain evidentiary submissions' supporting the allegation that the amount in controversy is satisfied" (citing *Dart Cherokee*, 135 S.Ct. at 551) (internal citation to record omitted)).

Moreover, Plaintiffs' claim for punitive damages alone is enough to put this case over the $5M threshold even if Plaintiffs' $3M compensatory figure is adopted. As this District has recognized, although Ohio law does not apply a "precise mathematical formula for calculating punitive damages," even awards which exceed the amount of compensatory damages can be appropriate. *Conrad v. McDonald's Corp.*, 2016 WL 1638889, *4 (S.D. Ohio 2016), report and recommendation adopted, 2016 WL 2853594 (S.D. Ohio 2016) (citations omitted). In fact, Ohio statutory law allows for punitive

damages in an amount twice that awarded for compensatory damages. See Ohio Rev. Code § 2315.21(D)(1)(a). Furthermore, this Court also has jurisdiction of this case under the general diversity statute, 28 U.S.C. § 1332(a), because the value of Plaintiffs' individual claims exceeds $75,000.

Last, as detailed above, before filing this case, Plaintiffs sent a written settlement demand to FCA US for $400,000. See Doc. 21, Ex. B, Krueger Decl., ¶ 4; See also Id. at Ex1. According to Plaintiffs, this demand was justified because they have suffered "far greater damages than simply the recoupment of the 'full purchase price' of their nonconforming motor vehicle," and this amount was necessary to cover their "compensatory, incidental, and punitive damages." *Id.* Both the Sixth Circuit and this District have found that settlement demands, like the $400,000 one made by Plaintiffs here, are evidence that a district court must consider when determining the amount in controversy. See, e.g., *Shupe v. Asplundh Tree Expert Co.*, 566 Fed.Appx. 476, 480-81 (6th Cir. 2014); *Finnegan v. Wendy's International, Inc.*, 2008 WL 2078068, **3-4 (S.D. Ohio 2008); *see also Norris v. People's Credit Co., Inc.*, 2013 WL 5442273, *3 (N.D. Ohio 2013).

For these reasons, Plaintiff's motion to remand (Doc. 15) is not well taken and is herein **DENIED.**

### III. MOTIONS TO DISMISS

Defendants ask the court to dismiss Plaintiffs' complaint asserting that Plaintiffs failed to state a claim upon which relief may be granted. Specifically, Defendants contend that Plaintiffs have failed to meet the pleading standards of Rule 8(a). In the alternative, to the extent that the Court were to find that Plaintiffs have pleaded a valid claim,

Defendants contend that the class Plaintiffs define is legally improper. Defendants contentions are not well-taken, in part.

*A. Legal Standard*

"Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted." *Ruff v. Bakery, Confectionery, Tobacco Workers & Grain Millers & Indus. Int'l,* 2015 WL 9412927,*2 (S.D. Ohio 2015) (citation omitted). To survive a motion to dismiss under the Rule, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). "Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Ruff,* 2015 WL 9412927 at *2.

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the general pleading standard and requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ruff,* 2015 WL 9412927 at *2 (citing *Twombly*, 550 U.S. at 555). Under Rule 8(a), a complaint is legally insufficient if it does nothing more than "tender[] 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Even beyond this standard, when, as here, Plaintiffs plead a claim of fraud they must meet the heightened pleading standards set forth in Rule 9(b), which requires the pleading of "specific facts about alleged misrepresentations, including the statements made and by whom, when and where they were made, and to whom they were made." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 Fed.Appx. 979, 983 (6th Cir. 2017) (emphasis added).

*B. Analysis*

Defendants argue that Plaintiffs' complaint fails to meet the pleading requires set forth in Rule 8(a) of the Federal Rules of Civil Procedure. Rather than pleading facts, Defendants argue that Plaintiffs proffer the legal conclusion that the offer made to them was insufficient to comply with the refund requirements of Ohio Code Section 1345.71, which mandates only that, upon return of a motor vehicle, a lessee be given that amount of money which equates with the actual charges "incurred by the consumer." Defendants further contend that Plaintiffs do not plead a claim under the Ohio Lemon Law, R.C. § 1345.71, et seq and instead plead a claim for fraud, contending that ISG intentionally misinformed them that the offer being made constituted the "full purchase price" as defined in Section 1345.71(F) of the Ohio Lemon Law. As such, Defendants contend that Plaintiffs' complaint fails to meet the pleading requirements to allege a plausible claim for fraud. Defendants contentions are not well-taken.

Notably, O.R.C. § 1345.72(B) requires that if the manufacturer is unable to conform the motor vehicle to any applicable express warranty, "the manufacturer, at the consumer's option, ... either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following: (1) [t]he full purchase price ... [and] (2) [a]ll incidental damages." *Piergallini v. Alfa Leisure, Inc.*, 2008 WL 687167 (S.D. Ohio 2008) (citation omitted). Additionally, O.R.C. §1345.75(A) explicitly provides for a statutory claim for damages against the manufacturer and states that "any consumer may bring a civil action in a court of common pleas or other court of competent jurisdiction against any manufacturer if the manufacturer fails to comply with section 1345.72 of the Revised Code

and, in addition to the relief to which the consumer is entitled under that section, shall be entitled to recover reasonable attorney's fees and all court costs.." The Supreme Court of Ohio has ruled that the "Lemon Law is designed to protect consumers from chronically defective new automobiles. It requires new vehicles to live up to warranties given by manufacturers. The Lemon Law attaches a clear duty to sellers and provides a clear remedy to buyers should the seller breach its duty." *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 750 N.E.2d 531 (Ohio 2001).

As noted by Plaintiffs, a manufacturer's duties under O.R.C. 1345.72 to reimburse a consumer who owns a "lemon" are created when: (1) the consumer is the owner of a vehicle that is covered by a written warranty, (2) the motor vehicle does not conform to the applicable expressed warranty, (3) the nonconformity is reported to the manufacturer or the manufacturer's authorized dealer within one year following the original date of delivery, or the first 18,000 miles of operation, whichever is earlier, and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially impaired the use, safety, or value of the motor vehicle, after a reasonable number of repair attempts. *Iams v. DaimlerChrysler,* 883 N.E.2d 466 (Ohio Ct. App. 2007).

Here, Plaintiffs' Amended Complaint states that "Plaintiffs leased a new 2016 Ram 1500 on May 4, 2016" and that Plaintiffs have "not been in possession of the nonconforming motor vehicle dating back to December of 2016." *See* Doc. 1, Ex. B, Am. Comp., PageID #39, at ¶8, #41, at ¶21. Additionally, Plaintiffs plead the following allegations in their complaint: "Named Plaintiffs' motor vehicle was out of service by reason of repair for a cumulative total of 30 or more calendar days;" "Named Plaintiffs'

motor vehicle possessed substantially the same nonconformity, which was subject to repair three or more times, and the nonconformity either continued to exist or was recurring;" and "FCA US LLC, their agents, or their authorized dealer, were unable to conform Named Plaintiffs' motor vehicle to any applicable express warranty by repairing or correcting the nonconformity after a reasonable number of repair attempts." *Id.*, pageID#40, ¶¶ 15, 16, 17. In light of the foregoing, at this time, the undersigned finds that Plaintiffs' complaint contains sufficient allegations to state a claim for relief under Ohio's Lemon law.

Defendants further assert that Plaintiffs' class allegations should be dismissed or stricken from the record because such allegations define an impermissible "fail-safe" class. *See, e.g., Swetic,* 235 F.Supp.3d at 890-91; *Sherrod,* 2016 WL 25979 at **3-5; Sauter, 2014 WL 1814076 at **4-9. A "fail-safe" class is one defined in such a way that it cannot be determined who is in the class until the case is resolved on the merits. *Id.; see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (a class definition is impermissible where it is a "fail-safe" class, that is, a class that cannot be defined until the case is resolved on its merits"). In this regard, Defendants contend that the "Master Class" and "sub-classes" defined by Plaintiffs in the Amended Complaint are improper "fail-safe" classes. *See* Doc. 1, Ex. B, Am. Comp., PageID ##45-46, 48, 54 (¶¶ 45, 57, 94). They include only those vehicle owners/lessees who were denied a refund of the "full purchase price" as defined by the Lemon Law. *Id.*

Because the classes proffered by Plaintiffs are defined by legal conclusions, Defendants argue that the issue of whether a person is actually a class member "can only be resolved by adjudications on the merits," (*i.e.*, by first determining whether a putative

class was subjected to fraud and/or denied a full recovery), and this makes clear they "are impermissible failsafe classes." *Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2017 WL 3578702, *7 (S.D. Ohio 2017). As such, Defendants ask the Court to dismiss the class allegations in Paragraphs 45, 57, and 94.

Plaintiffs' response in opposition to Defendants motion to dismiss fails to address FCA US's argument that the class they have defined is an improper fail-safe class. As such, Plaintiffs do not dispute Defendants' argument that this Court should dismiss or strike their class allegations as legally improper. Accordingly, the undersigned finds that Paragraphs 45, 57, and 94 should be dismissed from the complaint.

### IV. CONCLUSION

In light of foregoing, Plaintiffs' motion to remand (Doc.15) should be **DENIED** and Defendants' motions (Docs. 16, 17) to dismiss should be **GRANTED in part, and DENIED in part,** consistent with this Report and Recommendation.

**IT IS SO ORDERED.**

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MELISSA GILVIN,                                         Case No. 1:18-cv-107

     Plaintiff,

                                        Dlott, J.

     vs.                                                    Bowman, M.J.

FCA US LLC, et al.,

     Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).