UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA GILVIN, et al.,

    Plaintiffs,

  v.

FCA US, LLC., et al.,

    Defendants.

Case No. 1:18-cv-107

McFarland, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant FCA US LLC ("FCA") motion for summary judgment (Doc. 47) and the parties' responsive memoranda. (Docs. 49, 52). A hearing on the motion was held on October 29, 2019. Based on the pleadings and arguments of counsel at the hearing, the undersigned finds that Defendant's motion is not well-taken.

**I. Background and Facts**

Plaintiffs reside in Clermont County, Ohio. Defendant FCA, distributes, markets, and sells FCA motor vehicles to persons in Ohio. (Doc. 3). Defendant, ISG is an agent of FCA US LLC.

On or about May 4, 2016, Plaintiffs entered into a written lease agreement with the Jeff Wyler Eastgate dealership for a model-year 2016 Ram 1500 truck ("the Lease Agreement"). (Doc. 46. Ex. E, Lease Agreement, Page ID ##483-84; see also Doc. 4).

The 2016 Ram truck was sold, manufactured or distributed by Defendant FCA US LLC. (Doc. 4)

1

In the Retail Lease Order they signed, Plaintiffs' acknowledged that they understood Jeff Wyler Eastgate was "in no respect the agent of the Manufacturer," and that Plaintiffs' and the dealership were "the sole parties" to it.  (Doc. 46, Ex. 3).

The vehicle was out of service by reason of repair for a cumulative total of 30 or more calendar days.  (Doc. 4).  The vehicle had battery and transmission issues and often would not start.  (Doc. 46, Ex. 5).  Additionally, the digital dashboard screens had problems and the check engine light was on. Id.  Plaintiffs have submitted a lengthy service record from Jeff Wyler.  (Doc. 48, Exs. 7-12).

FCA, their agents and/or their authorized dealer, were unable to conform Plaintiffs motor vehicle to any applicable express warranty by repairing or correcting the nonconformity after a reasonable number of repair attempts. (Doc. 4, at ¶ 18).

In January 2017, Plaintiff returned the vehicle to Jeff Wyler.  (Doc. 46, Ex. 5, Interrogatory No. 1). Thereafter, Plaintiffs were forwarded to Defendant FCA's agent, ISG, to facilitate an informal dispute resolution regarding the refund process.  (Doc. 48, Ex. 4).

During the informal dispute resolution process, Plaintiffs' contend that FCA told them that in exchange for the return of their truck, the "buy back" amount they would receive would be reimbursement for the lease payments they made minus the amount of minor damage to the bumper. (Doc. 46, Exs. 4, 5.)

Notably, at the time of the offer in April 2017, Plaintiffs were current on their lease payments having paid $5,046.69.  (Doc. 46, Exs. 2, 5).  Plaintiffs' total lease payments required to be made to the lessor amounted to $5,046.69 ($458.79 x 11 months). Id. Plaintiffs understood that they were responsible for minor damage to the bumper totaling $465.64. (Doc. 48, Exs. 3, 6). Therefore, Plaintiffs contend that the amount refunded to

2

them for their nonconforming vehicle's lease payments minus the damage to the bumper should have been $4,581.05 ($5,046.69 - $465.64).

ISG was authorized by FCA to offer Plaintiffs' $4,106.05, which was less than the full amount of the lease payments minus a certain amount for the bumper damage. (Doc. 48, Ex. 3). Plaintiffs were told that since FCA had paid the costs of taxes, title fees, and security deposits (or simply waived these costs), they were not included in the offer being made. (Doc. 48, Ex. 15, 16). ISG gave Plaintiffs a few days to either accept the settlement offer or ISG would close the case. (Doc. 48, Ex. 15). Plaintiffs did not accept the settlement offer from ISG. (Doc. 48, Ex. 17). This action followed.

Plaintiffs originally filed this action in the Court of Common Pleas for Clermont County, Ohio in January 2018. Plaintiffs seek relief for, inter alia, "damages in excess of $25,000 … for the refund of the full purchase price of their nonconforming motor vehicles." (Doc. 1, Ex. B at p. 25). In addition to compensatory damages, Plaintiffs also seek punitive damages, attorneys' fees, and injunctive and declaratory relief. Id. at ¶ 92 (averring that for their fraud claim Plaintiffs are "seeking damages, plus punitive damages, interest, and attorneys' fees"); (Id. at ¶¶ 105-06) (requesting injunctive and declaratory relief); See also Id. at ¶¶ 107-08) (seeking recovery of attorneys' fees). Plaintiffs' also seek to bring this action on behalf of themselves as well as two classes of persons.

Thereafter, Defendants filed a notice of removal with this court on February 14, 2018. (Doc. 1). Defendants' notice of removal asserted jurisdiction under 28 U.S.C. § 1332(d)(2), which is commonly referred to as the Class Action Fairness Act ("CAFA"), as well as diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

3

Plaintiffs then sought to remand this matter back to state court. Defendants also asked the Court to dismiss Plaintiffs' claims. Plaintiffs' motion to remand was denied. Defendants' motion to dismiss was granted in part and denied in part. Namely, Plaintiffs' class allegations relating to a "fail-safe" class, paragraphs 45, 57, and 94 were dismissed and Defendant Ally was dismissed from this action. (Doc. 27, 29)

FCA now moves for summary judgment on Plaintiff's claims against it.

**II.     Analysis**

*A. Standard of Review*

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for

4

trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52, 106 S.Ct. 2505.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted). In this case, the evidence of record leaves no doubt that Lowe's is entitled to judgment as a matter of law.

    *B. FCA's motion for Summary Judgment is not well-taken*

        1.  *Lemon Law Claims*

Ohio's lemon law provides that if the manufacturer is unable to conform the motor vehicle to any applicable express warranty, "the manufacturer, at the consumer's option, ... either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the

5

following: (1) [t]he full purchase price ... [and] (2) [a]ll incidental damages." *Piergallini v. Alfa Leisure, Inc.,* 2008 WL 687167 (S.D. Ohio 2008) (citation omitted). Additionally, O.R.C. §1345.75(A) explicitly provides for a statutory claim for damages against the manufacturer and states that "any consumer may bring a civil action in a court of common pleas or other court of competent jurisdiction against any manufacturer if the manufacturer fails to comply with section 1345.72 of the Revised Code and, in addition to the relief to which the consumer is entitled under that section, shall be entitled to recover reasonable attorney's fees and all court costs."

The Supreme Court of Ohio has ruled that the "Lemon Law is designed to protect consumers from chronically defective new automobiles. It requires new vehicles to live up to warranties given by manufacturers. The Lemon Law attaches a clear duty to sellers and provides a clear remedy to buyers should the seller breach its duty." *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 750 N.E.2d 531 (Ohio 2001).

Notably, a manufacturer's duties under O.R.C. 1345.72 to reimburse a consumer who owns a "lemon" are created when: (1) the consumer is the owner of a vehicle that is covered by a written warranty, (2) the motor vehicle does not conform to the applicable expressed warranty, (3) the nonconformity is reported to the manufacturer or the manufacturer's authorized dealer within one year following the original date of delivery, or the first 18,000 miles of operation, whichever is earlier, and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially impaired the use, safety, or value of the motor vehicle, after a reasonable number of repair attempts. *Iams v. DaimlerChrysler*, 883 N.E.2d 466 (Ohio Ct. App. 2007).

FCA argues that it is entitled to summary judgment on any Lemon Law claim pleaded by Plaintiffs because they admit that they do not possess the model-year 2016 Ram 1500 truck that is the subject of their claims, and that they returned it to the lessor (not FCA) even before this lawsuit was filed. (Doc. 46, Exs. 4, 5). According to Defendant FCA, because Plaintiffs no longer possess the truck, they cannot return it to FCA as is required to obtain relief under the Lemon Law statute. Defendant's contention is not well-taken.

As noted above, O.R.C. 1345.72(B) states that the manufacturer "shall accept return of the vehicle from the consumer and refund each of the following: (1) The full purchase price; (2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging." Here, the record establishes that Plaintiffs' returned their non-working vehicle to FCA's authorized dealer on or about January of 2017. (Doc. 46, Ex. 5). Plaintiffs were then forwarded to FCA's agent, ISG, to facilitate the refund process. Plaintiffs also continued making lease payments for several months following the return of said nonconforming vehicle. Plaintiffs contend that FCA's offer did not comport with Ohio Lemon law and they rejected the offer.

In light of the foregoing, Plaintiffs have provided sufficient evidence to survive summary judgment that they complied with Ohio's lemon law where Plaintiffs allowed a reasonable number of attempts for the manufacturer to repair their vehicle, then returned their nonconforming vehicle, and finally, requested a refund for said vehicle under the

applicable Ohio law. (Doc. 48, Exs. 4, 6-12). As such, FCA has failed to establish that they are entitled to judgment as a matter of law with respect to Plaintiffs' lemon law claim.

### 2. Fraud Claims

Under Ohio law, a plaintiff must plead and prove six elements to support a claim for fraud: "(a) a representation or, where there is a duty to disclose, a concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) an injury proximately caused by the reliance." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (quoting *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076, 1083 (1991)). "The elements of the claim are conjunctive, and accordingly all of them must be shown." *Graham*, 350 F.3d at 507 (citation omitted).

Here, Plaintiffs' allege that they were not told at the time they entered into the Lease Agreement about certain information related to a return under the Lemon Law. Plaintiffs also contend that they were initially told during the informal dispute resolution process that they participated in with FCA that they would be reimbursed for lease payments minus costs associated with a damaged bumper.

FCA contends that it is also entitled to judgment as a matter of law with respect to Plaintiffs' fraud claims. In this regard, FCA contends that Plaintiffs have no evidence that it made any actionable representation or omission. FCA argues that what Plaintiffs were told or not told about the terms and consequences of the Lease Agreement they entered into has nothing to do with FCA. The evidence proves that FCA was not a party to the

8

Lease Agreement, and that Plaintiffs understood that the lessor (Jeff Wyler Eastgate) was not acting for, or on behalf of, FCA with respect to the Lease Agreement. Additionally, FCA also contends that any fraudulent actions immediately following Plaintiffs' return of their nonconforming vehicle, as well as during the "negotiation" process, should not be deemed actionable, with FCA arguing that their pattern of fraudulent activity should be shielded from liability under the "settlement privilege."

In support of their fraud claim, Plaintiffs argue that they were not told about the "consequences" of the lease agreement when FCA omitted said "consequences" from their initial lemon law disclosure. (Doc. 46, Exs. 4,5, Doc. 48, Gilvan Aff. ¶22; Doc. 48, Ex. 2 ). Additionally, Plaintiffs contend that FCA misrepresented their internal procedures and refund amounts throughout the entire post-return, buyback process as a method of inducing reliance and compliance to FCA's terms. (Doc. 48, Exs. 3, 4, 6, 15-17). According to Plaintiffs, the fraudulent statements and actions of FCA were material to the transaction at hand as Plaintiffs were unaware of the "consequences" of purchasing their car at the time of initial sale. Plaintiffs relied on Defendant's statements and were induced to even take part in the buyback process by the misrepresentation of a return of the full purchase price for their nonconforming motor vehicle. (Doc 46, Ex. 5, Doc. 48, Ex. 1, 2). Plaintiffs' contend that FCA's conduct has resulted in lasting negative consequences to Plaintiffs such as the financial loss, the impact on Plaintiffs' credit, and the extreme amount of time incurred and strain caused by FCA's actions. (Doc. 46, Ex 5; Doc. 48, Ex. 1 Gilvin Aff. ¶ 22).

Plaintiff further asserts that Ohio Law is clear that at the time of purchase or lease, it is the manufacturer's obligation to provide a written statement of rights to the consumer under Ohio's lemon law. R.C. 1345.74(A). In the case of a leased motor vehicle, "the written statement described in this division shall be provided to the consumer by the manufacturer, either directly or through the lessor, at the time of execution of the lease agreement." *Id.* Thus, the manufacturer has an obligation to provide a written statement of rights under Ohio's lemon law. Plaintiffs argue that FCA failed to disclose said "consequences" to Plaintiffs at the time of the initial sale. Id. Lemon Law Notice, Doc. #48-2. Thus, Plaintiffs contend that Ohio's lemon law imposes a duty on manufacturers to disclose.

Additionally, Plaintiffs argue that FCA's assertion that any statements made during the buy back process are inadmissible under the "settlement privilege" is misplaced. In this regard, Plaintiffs argue that both the Ohio Evid. Rule 408 and its Federal counterpart both clearly state that the inadmissibility of any acts and statements applies under these rules only when there is a "claim which is disputed" or a "disputed claim." See Ohio Evid. Rule 408 and Fed. R. Evid. 408(a). *See also Korn, Womack, Stern & Assoc., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566 (6th Cir.1994) (stating that for Rule 408 to apply, "there must be an actual dispute, or at least an apparent difference of view as to the validity or amount of the claim" (quoting McCormick, Evidence § 274 at 811 (3d ed. 1984)). In Plaintiffs' dealings with FCA, Plaintiffs argue that there was no dispute or difference in view regarding Plaintiffs' request for a refund under Ohio Law until four months into the buy-back process when Plaintiffs received their one and only offer.

Whether or not fraud exists is generally a question of fact. *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 84. Here, Plaintiffs have provided sufficient evidence establishing genuine issues of fact relating to FCA's alleged fraudulent misrepresentations of the lease agreement and/or during the buy-back process. Accordingly, FCA's motion for summary judgement is not well taken in this regard.

### 3. Injunctive Relief

FCA argues that it is entitled to summary judgment on any injunctive and declaratory relief claims that remain because Plaintiffs' underlying Lemon Law and fraud claims are not legally viable. *See supra*. As this District has recognized, a claim for an "injunction" "is not an independent cause of action, but rather a request for relief that is wholly dependent on the merits of" a viable substantive legal claim. *NAECIS Outreach v. Vilsak*, 2014 WL 6810781, *3 (S.D. Ohio 2014). FCA's contention is not well-taken.

As outlined above, Plaintiffs' have stated viable Lemon Law and fraud claims, sufficient to defeat FCA's motion for judgment as a matter of law.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant FCA's motion for summary judgment (Doc.47) be **DENIED**.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MELISSA GILVIN, et al., | Case No. 1:18-cv-107 |
| Plaintiffs, | McFarland, J. |
| v. | Bowman, M.J. |
| FCA US, LLC., et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981)