**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MELISSA GILVIN, et al., | Case No. 1:18-cv-00107 |
| Plaintiffs, | Judge McFarland |
| v. | Magistrate Judge Bowman |
| FCA US LLC, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant FCA US LLC ("FCA") and Defendant Impartial Services Group a/k/a Stericycle Expert Solutions ("ISG") separate motions for summary judgment (Docs. 79, 71) and the parties' responsive memoranda. (Docs. 85, 88, 75, 87). Based on the pleadings and arguments contained within the memoranda, the undersigned finds that neither motion is well-taken.

**I. Background & Facts**

Plaintiffs reside in Clermont County, Ohio. Defendant FCA distributes, markets, and sells FCA motor vehicles to persons in Ohio. (Doc. 3). Defendant ISG is an agent of FCA US LLC.

On or about May 4, 2016, Plaintiffs entered into a written lease agreement with the Jeff Wyler Eastgate dealership for a model-year 2016 Ram 1500 truck ("the Lease Agreement"). (Doc. 46, Ex. E, Lease Agreement, PageID ##483-84; see also Doc. 4). The 2016 Ram truck was sold, manufactured or distributed by Defendant FCA US LCC. (Doc. 4). In the Retail Lease Order they signed, Plaintiffs' acknowledged that they understood Jeff Wyler Eastgate was "in no respect the agent of the Manufacturer," and

that Plaintiffs' and the dealership were "the sole parties" to the Agreement. (Doc. 46, Ex. 3).

The vehicle was out of service by reason of repair for a cumulative total of 30 or more calendar days. (Doc. 4). The vehicle had battery and transmission issues and often would not start. (Doc. 46, Ex. 5). Additionally, the digital dashboard screens had problems and the check engine light was on. (*Id.*). Plaintiffs have submitted a lengthy service record from Jeff Wyler. (Doc. 48, Exs. 7-12).

FCA, their agents and/or their authorized dealer, were unable to conform Plaintiffs motor vehicle to any applicable express warranty by repairing or correcting the nonconformity after a reasonable number of repair attempts. (Doc. 4, at ¶ 18). In January 2017, Plaintiff returned the vehicle to Jeff Wyler. (Doc. 46, Ex. 5, Interrogatory No. 1). Thereafter, Plaintiffs were forwarded to Defendant FCA's agent, ISG, to facilitate an informal dispute resolution regarding the refund process. (Doc. 48, Ex. 4).

On April 27, 2017, ISG sent Plaintiffs an offer for compensation for the return of their vehicle. (Doc. 48, Ex. 3). ISG was authorized by FCA to offer Plaintiffs $4,106.05. (*Id.*). At the time of this offer, Plaintiffs were current on their lease payments, having paid $5,046.69 ($458.79 x 11 months). (Doc. 46, Exs. 2, 5). Plaintiffs understood that they were responsible for minor damage to the bumper, estimated at $465.64. (Doc. 48, Exs. 3, 6).

On May 2, 2017, ISG told Plaintiffs that they were "only entitled to the monthly payments less the damages to the vehicle which they provided the estimate for in the amount of $465.64." (Doc. 48, Ex. 15). Under this evaluation, Plaintiffs contend that the

2

amount refunded to them for their nonconforming vehicle should have been $4,581.05 ($5,046.69 - $465.64).

On May 12, 2017, ISG altered their explanation of the offer, and told Plaintiffs that they were "only entitled to his monthly payments less the damages to the vehicle and the fees covered to outside sources in the matter of the security deposit, title/registration and sales tax. (Doc. 48, Ex. 16). Plaintiffs were told that since FCA had paid the costs of taxes, title fees, and security deposits (or had simply waived these costs), they were not included in the offer being made. (Doc. 48, Ex. 15, 16). ISG gave Plaintiffs a few days to accept the settlement offer, otherwise ISG would close the case. (Doc. 48, Ex. 15). Plaintiffs did not accept the settlement offer from ISG. (Doc. 48, Ex. 17). This action followed.

Plaintiffs originally filed this action in the Court of Common Pleas for Clermont County, Ohio in January 2018. Plaintiffs seek relief for, inter alia, "damages in excess of $25,000 … for the refund of the full purchase price of their nonconforming motor vehicle." (Doc. 1, Ex. B at p. 25). In addition to compensatory damages, Plaintiffs also seek punitive damages, attorneys' fees, and injunctive and declaratory relief. *Id.* at ¶ 92 (averring that for their fraud claim Plaintiffs are "seeking damages, plus punitive damages, interest, and attorneys' fees"); (*Id.* at ¶¶ 105-06)(requesting injunctive relief and declaratory relief); See also *id.* at ¶¶ 107-08)(seeking recovery of attorneys' fees). Plaintiffs filed this action on behalf of themselves as well as two classes of persons.

Defendants filed a notice of removal with this court on February 14, 2018. (Doc. 1). Defendants' notice of removal asserted jurisdiction under 28 U.S.C. § 1332(d)(2), which is commonly referred to as the Class Action Fairness Act ("CAFA"), as well as diversity jurisdiction pursuant to 28 U.S.C. §1332(a). Following removal, Plaintiffs sought

to remand this matter back to state court (Doc. 15) and Defendants Ally and FCA filed separate motions to dismiss (Docs. 16, 17). The undersigned addressed all three motions in a single Report & Recommendation. (Doc. 27, adopted by the Court in Doc. 30). Plaintiffs motion to remand was denied. (*Id.*). FCA's motion was granted in part, dismissing paragraphs 45, 57, and 94 of Plaintiffs' Amended Complaint containing class allegations relating to a "fail-safe" class. (Docs. 27, 29). Ally's motion was granted, dismissing them from the action. (*Id.*).

Defendant FCA has previously filed a motion for summary judgment (Doc. 47), which the undersigned has recommended be denied. (Doc. 77). The Court has not yet issued an order adopting or rejecting this R&R. Defendant FCA now moves again for summary judgment, and Defendant ISG moves for the first time for summary judgment on Plaintiff's claims against them. These motions will be addressed in turn.

## II. Legal Standard

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts … in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment – rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### III. Plaintiffs have a legitimate claim against FCA under Ohio's Lemon Law

Defendant FCA supports its motion for summary judgment by arguing that Plaintiffs would be given a "windfall" if FCA were required to pay more than their initial settlement offer of $4,106.05. (See Doc. 79, PageID ##790-791). They argue that their offer removes

5

the taxes, title fees and security deposit on Plaintiffs' vehicle, which Plaintiffs admits they did not pay for, so in turn Plaintiffs are not entitled to a return of the value of those items.

Defendant FCA relies on a case from California, *Deleon v. Ford Motor Co.* to make the argument that lemon laws in Ohio are not designed to give a windfall to an injured buyer. In *Deleon*, the Plaintiff car buyer had traded in an old vehicle as part of her down payment on a new vehicle. *Deleon v. Ford Motor Co.*, 2019 WL 7195325 at *9 (CD Cal. 2019). The old vehicle had negative equity, which was applied to the loan balance for the new vehicle. *Id.* Upon returning the new vehicle under California's lemon law, the Plaintiff sought to recoup this negative equity. *Id.* The Central District of California determined that the Defendant manufacturer was not required to refund the negative equity because the state's lemon law only required reimbursement of the actual price of the new motor vehicle, not amounts owed on older vehicles. *Id.* at *11.

*Deleon* is not controlling law in this District, and it is not on point. Here, Plaintiffs are not asking for a windfall, but instead are asking for reimbursement of the money they actually spent on their leased vehicle. Additionally, the costs at issue here are costs that are explicitly included in the reimbursement mandate within ORC §1345.72. It is uncontested that Plaintiffs paid $5,046.69 on their vehicle lease. It is also uncontested that this value did not include the taxes, title fees, and security deposit, due to the dealership's "no money down" offer on the leased vehicle. To remove those costs from the actual money paid by Plaintiffs would require Plaintiffs to cover costs upon returning a lemon vehicle that they otherwise would have been refunded, had they paid those fees at signing. ORC §1345.71 explicitly includes the fees at issue in the definition of "full

6

purchase price," and ORC §1354.72 explicitly requires the manufacturer of a lemon vehicle to refund the "full purchase price" upon return of the vehicle.

Defendant FCA also argues that they were not required under Ohio's Lemon Law to offer the Plaintiffs the "full purchase price." In making this argument, they rely on *Maitland v. Ford Motor Co.*, in which the Ohio Supreme Court found that Ohio's Lemon Law did not permit a car buyer to bring an action against the manufacturer of a lemon vehicle *after accepting* a settlement offer for less than the full purchase price. *Maitland v. Ford Motor Co.*, 103 Ohio St. 3d 463. In other words, Ohio's Lemon Law permits settlements for less than the full purchase price, and a person who has accepted such a settlement cannot later bring suit for the difference.

Defendant FCA argues that the *Maitland* holding applies not only to accepted settlements, but settlement offers that are rejected by the buyer, as is the case here. However, this proposed interpretation of *Maitland* perverts its holding and would effectively bar any action under Ohio's Lemon Law. The *Maitland* court analyzed the requirements of bringing a suit under Ohio's Lemon Law. Prior to initiating a civil suit, "the consumer must … resort to an informal dispute-resolution process if one exists." *Maitland*, 103 Ohio St. 3d at 466. This process may be performed by a manufacturer-established dispute settlement board, though the creation of such a board is optional. *Id.* A settlement offer is "binding on the manufacturer, but not on the consumer … The consumer may reject the decision and pursue a civil action under R.C. 1345.75." *Id.* If the consumer accepts an offer, "the dispute is considered settled once the manufacturer performs." *Id.*

Defendants do not allege that Plaintiffs failed to attempt informal dispute resolution on this claim. Instead, they allege that *Maitland*'s holding means that "a defendant cannot

7

be held liable when it offers less than the 'full purchase price' during a settlement negotiation.'" Doc. 79, PageID #792. However, *Maitland* allows for civil action where a settlement offer is rejected by the buyer, as is the case here. Plaintiffs received a settlement offer from Defendant ISG on behalf of Defendant FCA. They did not accept the offer, and Defendant ISG closed the case on behalf of Defendant FCA. Plaintiffs are therefore fully entitled to bring suit against Defendant FCA for the full purchase price of their vehicle under Ohio's Lemon Law.

FCA has failed to establish that they are entitled to judgment as a matter of law with respect to Plaintiff's lemon law claim.

**IV. Plaintiffs have alleged sufficient facts to hold Defendant ISG liable for fraud**

Defendant ISG offers several independent arguments for why Plaintiffs' claims against them fail.

ISG's first argument is that it is not liable for fraud because Plaintiffs claims arise from communications made at the time they signed their lease with Jeff Wyler, months before ISG's involvement in the situation. ISG quotes eight separate paragraphs of the Amended Complaint, each which include allegations against FCA in regards to the "No Money Down" offer on Plaintiffs' lease. Noticeably, ISG does not quote any of the paragraphs in which Plaintiffs allege fraud in the buyback process. Plaintiffs quote ISG's website in which they position themselves as experts on the lemon laws of various states (Doc. 4, Amended Complaint at ¶ 23), and then include several allegations of fraud against ISG specifically – namely that ISG misrepresented their knowledge of and compliance with Ohio's Lemon Law in order to induce Plaintiffs into accepting a settlement offer for less than the full amount available to them under that law. *Id.* at ¶ 69.

Plaintiffs allegations include communications they had directly with ISG, so ISG's first argument is not well taken.

Defendant ISG's second argument in support of its motion is that it was operating at all times as an agent of Defendant FCA, a fact which was disclosed to and known by all parties. Citing *Plain Dealer Publ. Co. v. Worrell*, 178 Ohio App. 3d 485, 489 (9th Dist. 2008), ISG argues that, as an agent of a disclosed principal, they are not liable for any of their actions taken on behalf of FCA. *Plain Dealer* summarizes the law accurately, but only in regards to actions arising in contract. Here, Plaintiffs action for common law fraud rises from tort. *See Russ v. TRW*, 59 Ohio St. 3d 42, 49 (1991). "[I]t is a generally accepted proposition of agency and tort law that even a disclosed agent, acting on behalf of his principal, is personally liable for his own torts – including negligence." *Adamo Equipment Co. v. Alexander & Alexander, Inc.*, 1987 U.S. App. LEXIS 7978 at *6-7 (6th Cir.). Agency immunity is not a defense for ISG in this case.

ISG also argues that Plaintiffs' fraud claims fail because Plaintiffs cannot show justifiable reliance, as is necessary when asserting a fraud claim. ISG claims that, because Plaintiffs ultimately rejected the offer of settlement, that Plaintiffs could not have relied on any communication from ISG. Reliance is one factor directly addressed by the undersigned in a Report & Recommendation following Defendant FCA's first motion for summary judgment: "Plaintiffs relied on Defendant's statements and were induced to even take part in the buyback process by the misrepresentation of a return of the full purchase price for their nonconforming vehicle. Plaintiffs' contend that FCA's conduct has resulted in lasting negative consequences to Plaintiffs such as the financial loss, the impact on Plaintiffs' credit, and the extreme amount of time incurred and strain caused by

9

FCA's actions." (Doc. 77 at PageID #768). While the previous R&R addresses FCA's alleged actions with respect to Plaintiffs' fraud claim, these actions are the same as those taken by ISG, and so the same conclusion follows. Plaintiffs have alleged sufficient facts that they relied upon ISG's representations that they would receive a refund of their full purchase price if they chose to return their vehicle, and suffered due to that reliance, in order to survive Defendant ISG's motion for summary judgment in their favor.

Finally, Defendant ISG argues that it is not liable due to the fact that it is not a manufacturer, and Ohio's Lemon Law only enforces a duty upon manufacturers of lemon vehicles. However, Plaintiffs' fraud claims against Defendants are independent of their Lemon Law claim. *See* Doc. 77 (where the undersigned treated Plaintiffs' Lemon Law and fraud claims as separate causes of action against Defendant FCA). As discussed above, Defendant ISG is liable for any acts of fraud it has committed, and Plaintiffs have alleged sufficient facts to survive Defendant ISG's motion for summary judgment.

## V. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant FCA's motion for summary judgment (Doc. 79) and Defendant ISG's motion for summary judgment (Doc. 71) be **DENIED**.

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MELISSA GILVIN, et al., | : |
| | :    Case No. 1:18-cv-00107 |
|     Plaintiffs, | : |
| | :    Judge McFarland |
|     v. | : |
| | :    Magistrate Judge Bowman |
| FCA US LLC, et al., | : |
| | : |
|     Defendants. | : |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

11